IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| **DEMETRIUS HERBERT.** )<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>**OLYMPIA HOTEL MANAGEMENT LLC,**[1] )<br>*Defendant.* ) | **CASE NO. 3:13-CV-00015**<br><br>**MEMORANDUM OPINION** |

Plaintiff Demetrius Herbert ("Plaintiff") alleges sexual harassment and race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), in his suit against Defendant Olympia Hotel Management, LLC ("Defendant"). This matter is before the Court upon the Motion for Summary Judgment filed by Defendant on December 20, 2013 and argued before the Court on February 3, 2014. For the following reasons, I will grant Defendant's motion.

## I. BACKGROUND

Plaintiff Demetrius Herbert worked as a cook in the restaurant at the Holiday Inn Charlottesville-Monticello, which sits on land owned by Morris Creek Yacht Club. His employment began in December 2010 and was uneventful until November 2011. In November 2011, Herbert was washing his hands when Luke Divine, a server, walked behind him. Divine made contact with Herbert as he walked by; it is unclear whether Divine grinded on Herbert, as Plaintiff suggests, or merely bumped past him, as Defendant claims. It is undisputed that Divine made the comment "woo hoo" as he made contact with Herbert. Herbert then reported the incident to management. Both Restaurant Manager Bonnie Porcaro and General Manager Dale

---

[1] During the February 3, 2014 hearing on Defendant's Motion for Summary Judgment, Defendant informed the court that Olympia Hotel Management LLC, rather than Dale Ludwig Morris Creek Yacht Club, is the properly named defendant in this action.

Ludwig investigated the incident, and both concluded that any contact was inadvertent and minimal, and that Divine had been making light of an awkward situation when he said "woo hoo" rather than expressing sexual gratification. Herbert reported no further incidents of harassment to the managers. Herbert does allege that he overheard Divine and his supervisor laughing together on March 31, 2012 about playing an April Fool's Day prank on him. He complained again about the "woo hoo" incident, with Divine telling him "you need to get over it" and Ludwig noting the incident had occurred months ago and saying that Herbert needed to "let shit go."

In mid April of 2012, Herbert gave his two weeks notice that he would be resigning due to the fact that he was moving to North Carolina. On April 29, 2012, Herbert made it known that he would not cook orders submitted by Divine because he no longer wished to help Divine make money. Eventually, when Divine's customers were not getting their food, Porcaro suggested that Divine submit orders under a different name so that Herbert would cook the meals. Herbert began to cook, but threw the food away when he realized they were for Divine's customers. Herbert was then told that he had at most a few days left on his schedule before his replacement arrived, and that Ludwig preferred Herbert not to come in to work those final shifts due to his behavior.

On May 18, 2012, Herbert filed a Charge of Discrimination with the U.S. Equal Employment Opportunities Commission ("EEOC"). Herbert alleged sexual harassment by Divine, citing the November 2011 "woo hoo" incident and the March 31, 2012 conversation between Divine and Porcaro. Herbert also wrote down that was "discharged because of [his] race, Black," although he did not give any details about why he believed that to be the case, and he also did not formally allege unlawful termination.

On January 3, 2013, the EEOC determined not to pursue Herbert's sexual harassment claim. Herbert then filed the instant suit on April 3, 2013, alleging sexual harassment and racial discrimination. Defendant moved for summary judgment on December 20, 2013. Plaintiff responded on January 10, 2014, and Defendant replied on January 17, 2014. The motion was heard before the Court on February 3, 2014, although Plaintiff did not appear at the hearing.[2]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment (or partial summary judgment) "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be " 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. *See also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[2] Plaintiff is pro se, but has previously been responsive to filings and attended hearings before United States Magistrate Judge Robert S. Ballou, indicating that there is no problem with his receipt of CM/ECF notifications. The docket in this case reflects that the clerk dutifully mailed Plaintiff a copy of the ECF notice and the current docket sheet on December 20, 2013, the same day the motion for summary judgment was filed. Although it is true that "a pro se *complaint* must be liberally construed and 'held to less stringent standards than formal *pleadings* drafted by lawyers,'" there is no liberal construction of a failure to attend a hearing. *Middleton v. United* States, 2012 U.S. Dist. LEXIS 159347, at *6 (W.D. Va. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (emphasis added). It is Plaintiff's duty to diligently pursue his case and a failure to show up to argue at a summary judgment hearing does not entitle Plaintiff to a delay or a second hearing simply because he is pro se.

322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). If the proffered evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Anderson*, 477 U.S. at 242). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* (quoting *Celotex*, 477 U.S. at 317).

### III. DISCUSSION

Plaintiff has alleged two discrete violations of Title VII. The first is a hostile work environment sexual harassment claim, and the second is a race discrimination claim. Accordingly, I will address each alleged violation in turn.

#### 1. Sexual Harassment

To support a claim based on hostile work environment sexual harassment, a Plaintiff must show four things: (1) that the Plaintiff was subject to unwelcome conduct; (2) that the unwelcome conduct was based on the Plaintiff's sex; (3) that the unwelcome conduct was sufficiently severe or pervasive to alter the Plaintiff's conditions of employment; (4) that the unwelcome conduct was imputable on some factual basis to the employer. *See Crockett v. Mission Hosp., Inc.*, 717 F.3d 348, 354 (4th Cir. 2013); *see also Ocheltree v. Scollon Prods.,*

*Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). Notably, "legally sufficient evidence is required to transform an ordinary conflict [between employees] into an actionable claim" under Title VII. *Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000).

Plaintiff has alleged that Divine "walked behind [him] and rubbed his private parts against [him] and exclaimed "woo hoo", as if he was being sexually aroused. Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. Ex. 9 1. There is no dispute that this conduct suggests that Plaintiff satisfies the first prong of the test, that he was subject to "unwelcome conduct." *Crockett*, 717 F.3d at 354. Defendant notes its position that it is "[a]ssuming for purposes of this Motion . . . that Herbert can established that the alleged conduct was 'unwelcome.'" Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. 12.

However, Defendant does assert that Plaintiff cannot prove the second prong of the test, arguing that Plaintiff cannot prove that "but for" his gender, he would not have been a victim of harassment. *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997). Defendant argues that "the incident occurred in a relatively confined spot in the kitchen where employees routinely pass each other," and that "inadvertent contact by a co-worker does not constitute conduct 'because of' sex." Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. 12-13. However, Defendant does also state that it "is strongly denied" that "Divine rubbed his genitals against [Plaintiff] as he passed," arguing that Plaintiff "has not and cannot produce any evidence (documents or witnesses) to support this allegation." *Id.* at 13. The declaration of Bonnie Porcaro states that Herbert "never made this claim to me. He said only that Divine brushed up against him as he passed." Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. Ex. 8 1. The strong implication from what Defendant argues, of course, is that if Plaintiff's version of the story is true, then the conduct *would* have been because of sex.

Defendant has asserted that Porcaro and Ludwig both investigated the incident and concluded that "no unlawful conduct occurred," with Porcaro concluding that "any contact was inadvertent and minimal, that Divine had made the comment, 'woo hoo,' in a attempt to make light of an awkward situation." Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. at 5. But Plaintiff has asserted that Divine *did* rub his genitals against him in a sexual manner, and Defendant is incorrect that "Herbert has not and cannot produce *any* evidence" in support of that claim. *Id.* at 13.. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). In a case of sexual harassment, the victim's testimony is often a crucial piece of evidence which the jury examines and considers in determining whether the victim or the response from the alleged aggressor and/or employer is more credible. Summary judgment for either party on this point would therefore be inappropriate, as a reasonable jury could find either Plaintiff or Defendant more credible on their testimony as to what really happened in November 2011 between Plaintiff and Divine. I therefore find that for purposes of this summary judgment motion, Plaintiff has satisfied that the unwelcome conduct was based on the Plaintiff's sex. *Crockett*, 717 F.3d at 354.

However, Defendant is correct that Plaintiff fails to demonstrate that the unwelcome conduct was sufficiently severe or pervasive to alter the Plaintiff's conditions of employment. *Crockett*, 717 F.3d at 354. Plaintiff must demonstrate both that "he subjectively perceived the environment to be abusive" and "demonstrate that the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (citations and internal

quotation marks omitted). Plaintiff has obviously suggested that "he subjectively perceived the environment to be abusive." *Id.* Thus, the inquiry turns to how the law in this Circuit defines the objective portion of the test. Generally, there must be a showing that "the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive atmosphere." *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009) (quoting *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir .2007) (en banc)). Generally, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Shields v. Fed. Express Corp.*, 120 Fed. Appx. 956, 961 (4th Cir. 2005) (internal quotation marks omitted). The workplace must be "permeated with discriminatory intimidation, ridicule and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Thus, "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *Sunbelt*, 521 F.3d at 315; *see also Lorenz v. Fed. Express Corp.*, 2012 U.S. dist. LEXIS 116464, *24 (W.D. Va. 2012) (describing Title VII's standard for a hostile work environment claim as "demanding").

The Supreme Court has also indicated that "[c]ommon sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 82 (1998). I decline to determine that Plaintiff being subject to unwanted grinding is "simple teasing or roughhousing." *Oncale*, 523 U.S. at 82. I also decline to analogize the current case to others where other courts have determined that particular behaviors were not severe enough to make out a claim. Instead, I simply note that the precedent is very clear that incidents must be numerous and continuous in order to be deemed severe and pervasive. *See,*

*e.g., Shields*, 120 Fed. Appx. at 961; *Sunbelt*, 521 F.3d at 315.

Here, as Defendant notes, the November 2011 incident is a "singled, isolated incident of alleged conduct . . . insufficient to support a claim for hostile work environment." Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. 14. Plaintiff acknowledged in his deposition that the other incident cited in his EEOC complaint, a conversation between Divine and Porcaro, had to do with an April Fool's Day joke rather than anything demeaning. Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. Ex. 6, 25. Plaintiff suggests in his response that "[a] hostile work environment was created due to them keeping [him and Divine] working together." Pl.'s Resp. Br. 2. But even if it was insensitive to require Plaintiff to continue working with Divine, it can hardly be said that the decision to require them to continue working together after a determination that the incident was inadvertent was secretly "aimed to humiliate, ridicule, or intimidate" Plaintiff. *Jennings*, 482 F.3d at 695. Plaintiff also asserts that he "was teased repeatedly on the jobs by employees for something that happened" to him. Pl.'s Resp. Br. 3. But as Defendant notes, Plaintiff may not assert new claims of hostile work environment by raising them in his Response. *See, e.g., Lassiter v. Huntington Ingalls Indus., Inc.*, 2012 U.S. Dist. LEXIS 187671, *9 (E.D. Va. 2012) (holding that a *pro se* plaintiff could not assert new claims by raising them for the first time in her opposition to a motion for summary judgment), *aff'd*, 474 Fed. Appx. 234 (4th Cir. 2012).

Thus, Plaintiff has presented one isolated incident of harassment, one conversation that is unrelated to sexual harassment, and a vague claim of repeated teasing that this Court is barred from considering because it is raised so late in the litigation. In essence, Plaintiff presents one incident which, if taken as true, constitutes harassing behavior. This Circuit has explicitly made clear that "incidents must be more than episodic; they must be sufficiently concerted in order to be deemed pervasive." *Shields*, 120 Fed. Appx. at 961. Because Plaintiff presents one episodic

event rather than a concerted pattern of harassing behavior, Defendant is correct that Plaintiff is incapable of showing that the unwelcome conduct was sufficiently severe or pervasive to alter the Plaintiff's conditions of employment. *Crockett*, 717 F.3d at 354. Thus, Plaintiff's claim based on hostile work environment sexual harassment fails as a matter of law.

I note that Plaintiff's claim would also fail because Plaintiff is incapable of showing that the unwelcome conduct is imputable on some factual basis to his employer. *Crockett*, 717 F.3d at 354. When a claim is based on conduct by a co-worker, the employer may only be held liable "if it knew or should have known about the harassment and failed to take effective action to stop it." *Sunbelt*, 521 F.3d at 319 (internal quotation marks omitted). It is undisputed that "Herbert made no further complaints of alleged sexual harassment or report to the Company that its efforts had not resolved the issue," and "Herbert concedes that there were no subsequent instances of conduct that he perceived to be sexual in nature." Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. 15. Plaintiff argues that "[H]oliday Inn did nothing in response to my accusation of sexual harassment," but has also conceded that Defendant *did* investigate the incident, and he did not raise another instance of harassment to his supervisors. Pl.'s Resp. Br. 3. It is thus evident that Divine's behavior from November 2011 cannot be imputed to his and Plaintiff's employer, and Plaintiff's hostile work environment sexual harassment claim fails for that reason as well.

### 2. Race Discrimination

Plaintiff's EEOC charge of discrimination focused primarily on his sexual harassment claim, with the only mention of race discrimination being an assertion that stated "I believed I was . . . discharged because of my race, Black." Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. Ex. 9, 1. In Plaintiff's complaint, he stated, "I feel like afro Americans are treated differently on the job there have been several instances where blacks were fired and told they were not

allowed on the property while several white employees were fired and rehired after committing more serious violations." Pl.'s Compl. 7. Plaintiff repeats this last allegation in his Response brief. *See* Pl.'s Resp. Br. 3. Defendant notes that Plaintiff is not alleging unlawful termination, with Plaintiff claiming in his deposition that "I wasn't terminated [because of race] . . . but I feel like there was race discrimination taking place on the job." Def.'s Mem. in Supp. of Def.'s Mot. for Summ J. Ex. 6, 17. Plaintiff stated in his deposition that other instances of treating African Americans differently on the job included requiring him to clean the wall outside the smoking area, the fact that Mr. Ludwig only turned the radio down when an urban station was playing, something he did not do for other genres like country or top 40 music, and the fact that several African Americans were told not to return to the premises after being terminated. *Id.* at 17-21.

Defendant first argues that Plaintiff was required to exhaust his administrative remedies by filing a charge of discrimination with the EEOC prior to filing suit under Title VII. *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). Defendant further notes that the scope of a right to sue is determined by the contents of the EEOC charge. *Bryant*, 288 F.3d at 132; *see also Jones v. Calvert Grp. Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Notably, this Circuit strictly enforces that narrow scope of a plaintiff's right to sue. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (internal quotation marks omitted) (stating that "[i]f the plaintiff's Title VII claims exceed the scope of the EEOC charges and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred."). On the one hand, Plaintiff did mention a form of race discrimination in his EEOC charge, so this is not a scenario where Plaintiff is raising a brand new claim in his suit. *Cf. Bryant*, 288 F.3d at 132 (stating that "a plaintiff's claim is generally barred if his charge alleges discrimination on one basis – such as race – and he introduces another basis in formal litigation – such as sex"); *see*

also *Sloop v. Mem'l Mission Hosp., Inc.,* 198 F.3d 147, 149 (4th Cir. 1999) (Title VII retaliation claim barred when administrative charges alleged only age discrimination); *Lawson v. Burlington Indus., Inc.*, 683 F.2d 862, 863-64 (4th Cir. 1982). However, this *is* a case where the Plaintiff's EEOC allegations are too vague to support the more thoroughly fleshed out claims presented in the present complaint and in Plaintiff's deposition; this is likely because the race discrimination claim appears to be tacked on to Plaintiff's main concern, which is the November 2011 incident between him and Divine. *Cf. Taylor v. Va. Union Univ.*, 193 F.3d 219, 239 (4th Cir. 1999) (en banc) (finding no exhaustion of administrative remedies where facts incorporated into the charge were too inconclusive). I therefore agree with Defendant that Plaintiff's single allegation in his EEOC charge is too vague and inconclusive to have exhausted his administrative remedies for the more in depth allegations of racial discrimination he now wishes to assert in court, and so his claims are barred.

I do note, however, that "a pro se complaint must be liberally construed and 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Middleton v. United States*, 2012 U.S. Dist. LEXIS 159347, at *6 (W.D. Va. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Accordingly, out of an abundance of caution, I will also address Plaintiff's race discrimination claims on their merits to insure that this Court is affording proper consideration of claims presented by a pro se litigant.

A plaintiff can prove discrimination through either direct evidence or through the burden-shifting scheme of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and its progeny. *See Clement v. Satterfield*, 927 F. Supp. 2d 297, 305 (W.D. Va. 2013); *see also Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 263 (4th Cir. 2008) (citing *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004)) (*McDonnell Douglas* burden-shifting applies to

claims under Title VII and § 1981).

Direct evidence of discrimination is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Washington v. Kroger Ltd. Partnership I*, 2012 U.S. Dist. LEXIS 171993, at *3 (W. D. Va. 2012) (citing *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)). Plaintiff seems to present the claims of having to clean the wall outside the smoking area, Ludwig turning down the radio only when it was playing urban music, and African Americans being fired and being told not to return to the premises as direct or circumstantial evidence of a discriminatory attitude. But in his deposition, Plaintiff admitted that he was asked to clean the wall immediately after smoking and dumping the trash outside, and stated that he was "not going to say it is because of [his race]" that he was asked to perform that action. Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. Ex. 6, 19-20. With regards to the music, Plaintiff stated that "maybe [Ludwig] just didn't like that particular genre of music" and admitted that he had no specific basis to attribute that action to any form of racial animus. *Id.* at 21-22. Finally, all of Plaintiff's claims relating to certain African American employees being treated badly and certain white employees being treated favorably are wholly unsupported by any evidence. For example, Plaintiff alleges that one white employee named "Debbie las [*sic*] name unknown she walked off the job" and yet was allegedly promoted. Pl.'s Resp. Br. 3. Without more concrete proof for his allegations, there can be no finding of direct or circumstantial evidence of racial discrimination. Thus, Plaintiff must rely on *McDonnell Douglas* instead.

Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of discrimination. *See Texas Dept of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas*, 411 U.S. at 807. To demonstrate a *prima facie* case of discrimination,

Plaintiff must show that:

> (1) [he] is a member of a protected class; (2) [he] suffered adverse employment action; (3) [he] was performing [his] job duties at a level that met [his] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

*Hill v. Lockheed Martin Logistics Mgmt*, 354 F.3d 277, 285 (4th Cir. 2004) (citation omitted). If Plaintiff makes this showing, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id*. If the employer can do so, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's stated reasons are a pretext for unlawful discrimination. *Id*.

Here, however, Plaintiff cannot show that he suffered adverse employment action as a result of any discrimination. First, Plaintiff has explicitly stated that despite what he said in his EEOC charge, he is not in fact bringing a case of unlawful termination. Def.'s Mem. in Supp. of Def.'s Mot. for Summ J. Ex. 6, 17. Secondly, the actions Plaintiff complains of–being asked to clean the walls, turning down radio music, and being asked not to return to the premises for his last few shifts–cannot possibly be considered the kind of "discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment" that constitutes an adverse employment action. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). It is well settled that unlawfully motivated decisions such as "hiring, granting leave, discharging, promoting, and compensating" constitute adverse employment actions. *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981). It is simply not credible to suggest that any of the complaints Plaintiff makes are remotely comparable.

Plaintiff also cannot credibly claim that "[he] was performing [his] job duties at a level that met [his] employer's legitimate expectations." *Hill*, 354 F.3d at 285. Plaintiff admits that on

his last day at work, he refused to cook meals for customers on whom Divine was waiting and threw the food intended for those customers in the trash. Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. Ex. 6, 31-32. Defendant clearly had good cause to request that Plaintiff not work his last few shifts when he had engaged in such disruptive behavior. Lastly, I note that Plaintiff makes no effort whatsoever to present any evidence that "the position remained open or was filled by similarly qualified applicants outside the protected class," as Plaintiff is required to do in making out a prima facie case under *McDonnell Douglas*. *Hill*, 354 F.3d at 285.

In short, even if Plaintiff had exhausted his administrative remedies and was properly filing his race discrimination claim before this Court, he is unable to present any credible direct or circumstantial evidence of race discrimination, and equally unable to make out a prima facie case of discrimination under *McDonnell Douglas*. Accordingly, even if his claim was properly before this Court, it would properly be dismissed.

### IV. CONCLUSION

Plaintiff's hostile work environment sexual harassment claim must be dismissed because the unwelcome conduct was not sufficiently severe or pervasive, nor is it imputable on some factual basis to the employer. Plaintiff's race discrimination claim must be dismissed because Plaintiff failed to exhaust his administrative remedies, and even if he had, he cannot make out a prima facie case. Thus, Defendant's Motion for Summary Judgment will be granted. An appropriate order follows.

Entered this __4th__ day of February, 2014.

                                                                                    _____
                                                                                    NORMAN K. MOON
                                                                                    UNITED STATES DISTRICT JUDGE